## JOSEPH NEAL SMITH T/A COBB ISLAND PLUMBING *v.* NOBEL D. BUTLER T/A CAPITOL CONSTRUCTION CO.

[No. 196, September Term, 1973.]

*Decided November 28, 1973.*

The cause was argued before GILBERT, MENCHINE and LOWE, JJ.

*Thomas C. Hayden, Jr.,* with whom was *H. A. Turner, IV* on the brief, for appellant.

*Michael Alan Olshonsky* for appellee.

GILBERT, J., delivered the opinion of the Court.

The purchase by the appellee, Nobel D. Butler, of a 1965 Massey-Ferguson backhoe and front loader from Joseph Neal Smith, the appellant, in May, 1972, led to an action of breach of warranty and deceit being instituted in the Circuit Court for Charles County, (Mitchell, J.), by Butler against Smith.

The appellant and the trial court treated the cause of action as a claim for a breach of warranty under the Uniform Commercial Code, Md. Ann. Code Art. 95B.[1] The jury returned a verdict of twelve hundred dollars ($1,200.00) in favor of Butler. The appellee, apparently satisfied with his verdict, did not raise the issue in this Court that his cause of action was also founded upon deceit, in addition to breach of warranty, and the appellant has not posited the question. We, therefore, shall consider the case in the same light as the trial court, *i.e.*, one of a claim of breach of warranty.

In this appeal appellant contends that: (1) the trial judge erred in denying appellant's motion for directed verdict because there was no compliance with the requirements of Md. Ann. Code Art. 95B, § 2-607 (3) (a), that a buyer must within a "reasonable time" give "notice" to the seller of breach; and (2) the trial judge erred in allowing into evidence certain testimony pertaining to the condition and the cost of repair of the backhoe.

Butler read Smith's advertisement in a Washington D.C. newspaper styled the Evening Star, now known as the Washington Star-News, on or about May 13, 1972. The advertisement, listed under a classification of "heavy equipment" for sale said:

> " '65 Massey-Ferguson backhoe & loader,

---

1. *Compare* 2 *Anderson, Uniform Commercial Code* § 2-607:10 (2d. ed. 1971) wherein it is stated that a suit for breach of warranty should state that it is such a suit and aver notice. Failure to do so is demurrable.

excel. cond., new battery, new pump, new paint
job, $3,750. Call 301-259-2168."

Butler, who was engaged in the construction business, called Smith and, by prearrangement, viewed the backhoe. Smith demonstrated the machine, and Butler made a five hundred dollar deposit thereon. The balance of three thousand, two hundred-fifty dollars ($3,250.00) was paid in early June, 1972. According to Butler, he needed a bill of sale or title in order to license the backhoe in the District of Columbia, and he experienced some difficulty in obtaining a bill of sale from Smith. The bill of sale was finally produced by Smith after suit, but prior to trial. The backhoe, while delivered in June, was not used until some time thereafter, and it was then found to be defective. The defects were described in the testimony in some detail, but for the purpose of our discussion it is sufficient to note that the unit did not function as a backhoe is supposed to operate. Butler and his secretary, Mrs. Audrey H. Grant, both testified to numerous telephone calls made to Smith and that the calls went unanswered. Mrs. Grant stated that on one occasion she was able to reach Smith's wife and she, Mrs. Grant, reported the matter to Mrs. Smith. At the same time Mrs. Grant requested a "title" for the backhoe. Smith acknowledged receipt of some telephone calls through his "answering service". He said they were all in reference to a "title", and he emphatically denied that he had ever received notice that the machine was in any manner defective. Mrs. Smith admitted that she had a conversation with Mrs. Grant insofar as the "title" to the backhoe was concerned, but she denied that Mrs. Grant had mentioned that the backhoe was defective.

Butler also produced testimony from Charles E. Tyler, the operator of the backhoe, and from Merl B. Travis, a mechanical expert, that the machine was not in operable condition. The expert said that the cost of repair would be approximately three thousand dollars ($3,000.00). There was evidence that on two occasions attempts were made to use the backhoe, but because it was not properly operating, it was necessary to rent another unit in order to replace the

one that had been purchased from Smith. Tyler, the operator, said that on one site the backhoe was "run off the job" by the general contractor.

The Maryland version of the Uniform Commercial Code was adopted by the General Assembly in Laws of 1963, Ch. 538, and codified as Art. 95B. It is provided in § 2-607 (3) (a) thereof that when a tender has been accepted:

> "The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ."

No. 4 of the "Official Comment" thereon states:

> "The time of notification is to be determined by applying commercial standards to a merchant buyer. 'A reasonable time' for notification from a retail consumer is to be judged by different standards so that in this case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.
>
> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer . . . . Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Subtitle need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation."

Ordinarily the question of what is a "reasonable time" in which a buyer is to give notice to the seller of breach of warranty is a question of fact for the determination of the jury based upon the surrounding circumstances, 2 Anderson, *supra* at § 2-607:24. *Green Seed Co. of Ark. v. Williams*, 246 Ark. 463, 438 S.W.2d 717 (1969); *Warrens Kiddie Shoppe v. Casual Slacks, Inc.*, 120 Ga. App. 578, 171 S.E.2d 643 (1969).

This was also the rule under the Uniform Sales Act. *Fred J. Miller, Inc. v. Raymond Co.*, 265 Md. 523, 290 A. 2d 527 (1972); *Rittenhouse, W. Auto Co. v. Kissner*, 129 Md. 102, 98 A. 361 (1916).

In *Pritchard v. Liggett & Myers Tobacco Company*, 295 F. 2d 292, 298 (3d Cir. 1961) it was held that:

> "[w]here more than one inference may be drawn from undisputed facts, or the facts are disputed, the timeliness and sufficiency of a notice of breach of warranty are questions for the jury to resolve."

There are, however, some instances wherein the facts have been so clear that the question of reasonableness of the time for giving notice of the breach has been held to be a question of law for the court. The Supreme Court of Rhode Island in the case of *San Antonio v. Warwick Club Ginger Ale Co.*, 104 R. I. 700, 248 A. 2d 778 (1968) said that notice of an alleged breach of warranty given to a seller approximately one year after the buyer who had purchased a bottle of soda from seller and sustained an injury to her hand when opening the bottle was not within a reasonable time as a matter of law. Similarly, in *Rubber & Tire Materials Co. of Ohio v. Conley*, Ky.. 459 S.W.2d 609 (1970), the Court of Appeals of Kentucky reasoned that where a buyer waited ten years after knowing of the breach before he asserted it, that the delay was unreasonable.

Md. Ann. Code Art. 95B does not prescribe any particular form of notice. 2 Anderson, *supra* at § 2-607:26 states:

> "The notice to the seller of the breach of warranty may be either oral or written.

A telephone call is a sufficient notice of breach.

Although a written notice is sounder and more practical from the buyer's standpoint, there is no legal requirement that the notice be in writing and a writing is not required by the general definition of notice." (Footnotes omitted).

Furthermore, there is no requirement as to the content of the notice. It is sufficient if the buyer apprises the seller that the goods are defective [2] although the bringing of litigation itself is not regarded as notice, 2 Anderson, *supra* at § 2-607:28.

Md. Ann. Code Art. 95B, § 1-201 (26) provides:

"A person '*notifies*' or '*gives*' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person '*receives*' a notice or notification when

(a) It comes to his attention; or

(b) It is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications."

Hence it is not necessary that the seller *actually* receive the notice. The statute is satisfied if the buyer makes reasonable efforts to communicate to the seller that the goods are defective. *Jay V. Zimmerman Company v. General Mills, Inc.*, 327 F. Supp. 1198 (E.D. Mo. 1971). Under the provisions of Md. Ann. Code Art. 95B, § 1-201 (26), efforts to contact the seller through repeated telephone calls, even though unsuccessful, are sufficient to constitute notice within the meaning of Md. Ann. Code Art. 95B, § 2-607 (3) (a). Of

---

**2.** See 2 *Anderson, supra* at § 2-607:27; Annot., 53 A.L.R.2d 270 (1957); 3 *Bender's Uniform Commercial Code Service* § 5.02 (2) (b) (1973).

course, it is for the jury to determine, from the evidence presented, whether or not notice was given, *Pritchard v. Liggett & Myers Tobacco Company, supra.*

In the instant case, Judge Mitchell, obviously cognizant of the factual dispute presented by the testimony and fully aware that under the circumstances of this case the questions of "notice" and "reasonable time" were for the jury's determination, properly denied Smith's motion for a directed verdict and submitted the issue to the jury.

We turn now to the appellant, Smith's, second contention. He argues that the trial judge should not have allowed the testimony of the operator nor of the mechanical expert to be considered by the jury on the issue of damages. Smith bottoms his attack on the fact that the operator testified as to the condition of the backhoe as of October 1972 — approximately three months after delivery — and on the additional fact that the expert's testimony was directed to the condition of the backhoe and cost of its repair as of January 1973 — a period of approximately seven months after delivery.

We think the evidence to be both relevant and material. As we view the record it is patent that the testimony had a two-fold purpose. First it was offered to demonstrate that the backhoe was not in "excellent condition" when purchased from Smith by Butler or it, in the light of its limited use, would not have deteriorated in such a short period of time so as to necessitate three thousand dollars ($3,000.00) worth of repairs. The testimony was offered to show breach of an express warranty. *See Becker Pretzel Bakeries, Inc. v. Universal Oven Company,* 279 F. Supp. 893, 901 (D. Md. 1968). Second, the expert through his testimony established some basis for the jury's assessment of damages. The expert said that if the backhoe had been in "top condition" in June of 1972, it would have had a value of four thousand dollars ($4,000.00). An expert witness is allowed to give his opinion as to value when he is properly qualified and his testimony will aid the jury. *Brinsfield v. Baltimore City,* 236 Md. 65, 202 A. 2d 335 (1964); *Mullan v. Hacker,* 187 Md. 261, 49 A. 2d 640 (1946); *Belt R.R. Co. v. Sattler,* 102 Md. 595, 64 A. 507

474

(1906); *Sun Cab Co. v. Walston,* 15 Md. App. 113, 289 A. 2d 804 (1972), *aff'd* 267 Md. 559, 298 A. 2d 391 (1973). Expert testimony is also proper in regard to the operation and cost of repair or replacement of machinery. *Farley v. Yerman,* 231 Md. 444, 190 A. 2d 773 (1963); *May Oil Burner Corp. v. Munger,* 159 Md. 605, 152 A. 352 (1930); *Mullan v. Belbin,* 130 Md. 313, 100 A. 384 (1917).

*Judgment affirmed.*
*Costs to be paid by appellant.*