**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES H. FERGUSON, M.D.;
HEATHER R. STARK, M.D.,
<u>Plaintiffs-Appellants,</u>

v.                                                                        No. 95-2322

UPPER CHESAPEAKE MEDICAL
SERVICES, INCORPORATED,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
John R. Hargrove, Senior District Judge.
(CA-94-2792-HAR)

Argued: April 1, 1996

Decided: July 11, 1996

Before ERVIN, NIEMEYER, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Ervin wrote the opinion, in
which Judge Niemeyer and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Stephen Donald Langhoff, LANGHOFF & WACKER,
Baltimore, Maryland, for Appellants. Richard Jeffrey Magid,
WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Mary-
land, for Appellee. **ON BRIEF:** Carmina Perez, WHITEFORD,
TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

I

Dr. James Ferguson and Dr. Heather Stark ("the doctors"), both Canadian citizens, entered employment agreements with Upper Chesapeake Medical Services, Inc. The parties agreed, and the district court found, that the contracts included conditions precedent requiring the doctors to obtain Maryland medical licenses, obtain authorizations to work in the United States, and report for work. The contracts did not specify a time limit for satisfaction of the conditions. Fifteen months after the contracts were signed, only one of the conditions precedent had been fulfilled--Dr. Stark had obtained a Maryland license. Upper Chesapeake decided then that it no longer needed the doctors' services, and it terminated the agreements.

The doctors sued in the District of Maryland for breach of contract, and the district court granted summary judgment in favor of Upper Chesapeake. It held that a party has no duty of performance under a contract as long as there are conditions precedent that remain unfulfilled, so Upper Chesapeake was free to terminate the agreements. The doctors' appeal consists of two primary arguments. They assert first that Upper Chesapeake was barred from terminating the contracts by estoppel or waiver. Second, although they acknowledge that Upper Chesapeake had no duty to perform as long as conditions precedent remained unsatisfied, the doctors contend that Upper Chesapeake was not entitled to terminate the agreements until it had allowed the doctors a reasonable time to fulfill those conditions. Whether a reasonable time has passed, they conclude, is a question of fact for a jury.

We agree with the doctors' analysis of the law governing conditions precedent. Nevertheless, the undisputed evidence before us cannot support an inference that Upper Chesapeake failed to allow the

2

doctors a reasonable time to satisfy the conditions precedent. Waiver and estoppel were not argued in the district court, so we do not address their merits. Accordingly, we hold that Upper Chesapeake did not breach the agreements, and we affirm the district court's grant of summary judgment.

II

Maryland law controls this case, over which the district court had diversity jurisdiction. We review the district court's summary judgment de novo, and affirm only if the evidence, viewed in the light most favorable to the doctors, fails to create a genuine issue of material fact. Sempione v. Provident Bank, 75 F.3d 951, 954 (4th Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

III

The parties do not dispute the basic facts, so we excerpt from the district court's opinion:

> Upper Chesapeake, a managed care organization, provides a wide range of medical services to various groups and individuals. To supply medical services to its HMO[health maintenance organization] members, Upper Chesapeake enters into various contractual arrangements with area doctors. In the spring of 1992, Upper Chesapeake determined that it could offer more efficient and less costly surgical specialties to its HMO members by hiring an orthopedic surgeon. On July 30, 1992, Plaintiff Ferguson, a Canadian orthopedic surgeon who practiced in Ontario, Canada, and his wife, Plaintiff Stark, a primary care physician also practicing in Ontario, Canada, entered into separate employment contracts with Upper Chesapeake. Both contracts provided inter alia:
>
> 1. Term The term of this Agreement shall commence no later than January 1, 1993, or as soon as Physician obtains Maryland license and shall continue for a period of twelve (12) months.

3

See Defendant's Motion for Summary Judgment, Exh. 1 and Exh. 2.

On November 17, 1993, over a year after the parties entered into their respective contracts but before either Ferguson or Stark had reported for work, Upper Chesapeake terminated their contracts. As of this date, it is undisputed that only Stark had obtained her Maryland medical license and neither party had received immigration approval to work in the United States.

The doctors acknowledge that, during the fifteen-month period between the execution and termination of the contracts, Upper Chesapeake cooperated with their efforts to obtain licenses and immigration approval.

IV

A

The district court defined condition precedent:

A condition precedent is a fact or event that the parties intend must exist before there is a right to performance on a contract. Pradhan v. Maisel, 338 A.2d 905, 26 Md. App. 671 (1975) (holding no contractual duty arises where there is an unfulfilled condition precedent to a contract). If the condition does not occur, and is not excused, the promised performance need not be rendered. Laurel Race Course Inc. v. Regal Constr. Co., 274 Md. 142, 154, 333 A.2d 319, 327 (1975) ("It is fundamental that where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused.").

That definition is correct as far as it goes, but the conclusion the district court drew from it--that Upper Chesapeake was entitled to terminate the contracts because the conditions precedent had not been fulfilled--is a non sequitur.

4

The absence of a duty to perform under a contract is not equivalent to a freedom to terminate it. Performance is not <u>due</u> until conditions precedent have been satisfied, but a future obligation to perform once they are fulfilled exists upon the agreement's inception. Accordingly, the obligor must allow its counterpart an opportunity to satisfy the conditions. If the agreement does not specify the duration of that opportunity, the law implies a reasonable time. <u>E.g.</u>, E. Allan Farnsworth, <u>Contracts</u> § 8.3, at 569-70 (2d. ed. 1990).**1** Upper Chesapeake

_____

**1** We have located no Maryland case addressing this issue directly, but other jurisdictions provide ample support. <u>See City of Stockton v. Stockton Plaza Corp.</u>, 68 Cal. Rptr. 266, 270 (1968); <u>Lieberman Properties, Inc. v. Braunstein</u>, 522 N.Y.S.2d 874, 877 (N.Y. App. Div. 1987) ("In light of . . . the lack of a specific time period for performance of the condition precedent, it follows that in the event the plaintiff is not able to secure approval for the proposed subdivision within a reasonable time, the defendants retain the absolute right to cancel the contract."); <u>Carroll v. Wied</u>, 572 S.W.2d 93, 97 (Tex. Civ. App. 1978) ("We disagree with the argument that there can be no breach of contract before the condition precedent is fulfilled. The provision . . . implied . . . that the appellees would pursue their application for a loan diligently and would be allowed a reasonable time within which to secure it."); <u>see also Christopherson v. Blount</u>, 582 A.2d 460, 462 (Conn. 1990) ("In the absence of a specified time limit to comply with a condition precedent, the law implies a reasonable time."); <u>HECI Exploration Co. v. Clajon Gas Co.</u>, 843 S.W.2d 622, 634 (Tex. Ct. App. 1992) ("If a contract does not specify a time within which a party must fulfill a condition precedent, as was the case here, the law will imply that performance must occur within a reasonable time."); <u>Pearcy v. Environmental Conservancy</u>, 814 S.W.2d 243, 246 (Tex. Ct. App. 1991) ("[W]here a contract does not specify a time during which a condition precedent must occur, the condition precedent must occur within a reasonable time.").

The district court confused the instant agreements--bilateral contracts with conditions precedent to <u>performance</u>--with offers for unilateral contracts. Calamari and Perillo addressed the distinction:

> In [the case of] an offer to a unilateral contract B's performance is a condition precedent to A's duty of payment. It is also, under the classical view, a condition precedent to the formation of the contract--that is to say, performance of the act is the acceptance of the offer. It should be stressed again, however, that <u>the term "condition" is ordinarily reserved to describe acts or events</u>

5

was not free, therefore, to terminate the agreements at any time before the doctors fulfilled the conditions precedent. It was entitled to do so only if it had allowed them a reasonable opportunity.

Ordinarily the factfinder should determine whether the period allowed for fulfillment of conditions precedent was a "reasonable time." E.g., Christopherson v. Blount, 582 A.2d 460, 463 (Conn. 1990).**2** However, when the facts are undisputed and they support only one inference regarding the reasonableness of the time, the court may decide the question as a matter of law. See, e.g., Lynx, Inc. v. Ordnance Prods., Inc., 327 A.2d 502, 512 (Md. 1974).**3** In this case, the undisputed evidence shows that the parties entered into the contracts on July 30, 1992. The term of employment under each contract was to begin on January 1, 1993, or as soon as the doctor obtained a Maryland license, and was to last for one year. Upper Chesapeake cooper-

_____

which must occur before a duty of performance under an existing contract becomes absolute.

John D. Calamari & Joseph M. Perillo, The Law of Contracts § 11-3 (2d ed. 1977) (emphasis added).

**2 See also, e.g.**, Hamlin v. Steward, 622 N.E.2d 535, 540 (Ind. Ct. App. 1993); Johnson v. Zingarelli, 448 N.E.2d 1282, 1282 (Mass. App. Ct. 1983); Kesinger v. Burtrum, 295 S.W.2d 605, 609 (Mo. App. 1956); HECI Exploration Co., 843 S.W.2d at 634; cf. Lynx, Inc. v. Ordnance Prods., Inc., 327 A.2d 502, 512 (Md. 1974) ("Where notice of rejection or of breach has been given by the buyer, the sufficiency of the notice and whether it was given within a reasonable time are ordinarily questions of fact based upon all the surrounding circumstances."); Town of Glenarden v. Lewis, 273 A.2d 140, 144 (Md. 1971) ("What is a reasonable time is a question of fact, and depends upon all the circumstances of the case."); Smith v. Butler, 311 A.2d 813, 815 (Md. Ct. Spec. App. 1973) ("Ordinarily the question of what is a `reasonable time' in which a buyer is to give notice to the seller of breach of warranty is a question of fact for the determination of the jury based upon the surrounding circumstances.").

**3 See also, e.g.**, Smith, 311 A.2d at 816; cf. Pearcy, 814 S.W.2d at 246 ("Where the material facts are undisputed, the question of what is a reasonable time is a matter of law."); Carroll , 572 S.W.2d at 97 ("[W]here the facts are undisputed, as here, the issue of what is a reasonable time for performance is a question of law for the court.").

ated with the doctors' efforts to obtain licenses and immigration approval during the five months between the formation of the agreements and the intended beginning date of January 1, 1993, and it continued to cooperate for more than ten more months. Not until November 17, 1993, more than fifteen months after it entered the contracts and barely more than six weeks before the doctors' periods of employment were expected to end under the agreements' terms, did Upper Chesapeake decide that it had waited long enough. We agree. These circumstances support only one reasonable inference--that Upper Chesapeake allowed the doctors a reasonable time to satisfy the conditions precedent.

B

The doctors note correctly that the general rule of conditions precedent is subject to exceptions for fraud, bad faith, waiver, and estoppel. Laurel Race Course Inc. v. Regal Constr. Co., 333 A.2d 319, 325 (1975). They argue that Upper Chesapeake waived the contracts' "time conditions" by exhibiting willingness

> to extend the time of performance beyond January 1, 1993 and "Early Spring" 1993. And since the Defendant never advised the Plaintiffs of a date by which the conditions had to be fulfilled, it waived its right to insist on performance without first advising the Plaintiffs of a completion date.

Brief of Appellants at 18. The doctors also contend that equitable estoppel should bar Upper Chesapeake from terminating the contracts, because "Upper Chesapeake's actions and silence induced the Plaintiffs to continue their quest to obtain the immigration clearances and for Dr. Ferguson to obtain his Maryland medical license."

Upper Chesapeake counters that the doctors are precluded from arguing waiver or estoppel on appeal, because they failed to raise those issues before the district court. The doctors respond only that their arguments are based on Laurel Race Course , which the parties and the district court agreed "contain[ed] the applicable law." But the portions of the Joint Appendix to which the doctors refer reveal that the parties and the court cited Laurel Race Course only for the general rule of conditions precedent, without mentioning the exceptions

7

to the rule. Thus the issues of waiver and estoppel are not preserved for review, and we do not address their merits. Cf. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (holding that, "[e]ven in the case of pro se litigants," "fleeting references" are insufficient to preserve issues for appeal), cert. denied, 475 U.S. 1088 (1986); Tyler v. Runyon, 70 F.3d 458, 465 (7th Cir. 1995) ("[M]ere citation of the rule [of civil procedure] fails to preserve the merits of this issue for appeal.").

V

The doctors failed to satisfy the conditions precedent within a reasonable time, so Upper Chesapeake was free to terminate the contracts. Accordingly, we affirm the district court's summary judgment.

AFFIRMED

8